## Hopkins, et al. v. Blackburn.

(Decided October 18, 1911.)

### Appeal from Pike Circuit Court.

1. Conveyances—Action to Set Aside—Burden of Proof.—In an action by the children of a deceased grantor to set aside a conveyance made to his illegitimate son on the ground that the grantor did not have capacity to contract at the time the deed was executed; that it was without consideration and that its execution was procured by fraud on the part of the grantee, the burden of proof was upon the plaintiffs, and the evidence failing to support their contention, the conveyance was properly upheld.

2. Consideration.—The evidence shows that the conveyance was

based on a sufficient consideration. The $30.00 constituting the cash payment was much less than the aggregate amount appellee had furnished his father, and the obligation imposed upon to support his father was, of itself, a good, as well as a valuable consideration.

J. S. CLINE, J. D. ADKINS for appellants.

ROSCOE VANOVER, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This action was brought by the appellants, children of Elisha Hopkins, deceased, by his second wife, to set aside a deed executed by him in 1901, whereby he conveyed to the appellee, George Blackburn, an illegitimate son, a small tract of mountain land, in Pike County, said in the deed to contain fifty acres, but by a later survey found to contain only 33 acres. The consideration expressed in the deed was $30, in cash and the undertaking of the grantee to support the grantor the remainder of his life.

It was averred in the petition that no consideration was paid or rendered by the grantee for the conveyance; that the deed was procured by fraud on his part, and that the grantor was mentally incapable of contracting when the deed was made.

By an amended petition the names of two children alleged to have been born to the decedent by his first wife, were given, but, although made plaintiffs to the action, it does not appear that they have taken any part or interest in the case.

By his answer to the petition appellee traversed its averments; and the affirmative matter of the answer was in turn controverted by the appellants' reply which completed the issues.

Appellee's possession of the land continued nine years before appellants brought suit to set aside the deed, during which time he sold the mineral rights therein and a small quantity of timber therefrom. It is charged in the petition that he received for the mineral rights $200 and judgment for this amount, as well as for the value of the timber and rental value of the land was prayed against appellee. As to these items it is sufficient to say that appellee's evidence shows, without contradiction, that he realized for the mineral rights only $90, and for the timber $20; and the weight

of the evidence, as a whole, was to the effect, that the rental value of the land did not exceed $25 per year. However, further consideration of these matters will be unnecessary if appellants' attack upon the deed fails.

After the taking of proof by the parties the circuit court, upon submission of the case, rendered judgment dismissing the petition, and of that judgment appellants complain.

It appears from the weight of the evidence that Elisha Hopkins was somewhere between 80 and 90 years old when the deed to appellee was executed; that though an illiterate man he was neither an imbecile nor a lunatic, but on the contrary had mind enough to contract and be contracted with; and that he made the deed in question to appellee without request or solicitation from the latter. Indeed, it appears from the facts connected with its execution that the making of the deed was a conception of the grantor's own mind which he did not communicate to appellee until he requested him to send for a draftsman to write it; and that appellee manifested some reluctance in complying with the request; even telling the grantor, in substance, to "not mind about the deed." He persisted, however, and the preparation and due execution of the deed followed.

It is further disclosed by the evidence that though the grantor was then the father of at least five legitimate children, two by his first wife and three by the second, none of them had any affection for him, or had given him any assistance in making a support for himself and family. It is true one of the children by the last wife was too young to be of assistance in making a support for the family, but the other two could have given some assistance, had they been inclined to do so.

The second wife was his junior in point of age and had been, during their married life, notoriously unchaste; spending much of the time away from home with other men to the neglect of her household duties, husband and children. The evidence further shows that appellee, who by reason of the illegitimacy of his birth, had never been a beneficiary of paternal affection or care, nevertheless entertained a strong affection for his father, Elisha Hopkins, and for more than ten years before his death often provided him with clothing for himself and provisions for his family. Indeed, according to the evidence, two or three years before the execution

of the deed the old man and his family became so impoverished and helpless that appellee removed them to his own farm and in a house near his own, gave them food for themselves and provender for their stock, and then assured his father that he would keep him there, care for him and assist in caring for his family, if the latter's wife would quit her wanton ways, remain with him and care for her children.

Under this arrangement Elisha Hopkins and his family remained for a year on appellee's land—the wife being, however, much of the time absent—and then of their own volition returned to their former home, where appellee continued, though perhaps with less frequency, to assist his father. With the latter, times grew worse and the weight of years soon incapacitated him for work. At this juncture his wife and her children no longer concerned themselves about his welfare and became apparently indifferent to his and their own fate. While in this deplorable condition, the old man was taken by two of the appellants to appellee's residence where he was again kindly received. According to the uncontradicted testimony of appellee, a member of his family, and a neighbor who was at the time present, the old man's condition at that time was pitiable; his clothes being in rags and his person filthy. Appellee immediately removed his ragged clothing, gave him a bath and redressed him in apparel of his own. It was the day following this return of the old man to appellee's home that he executed to the latter the deed conveying the land in controversy.

The burden was upon appellants to show that the grantor did not have the capacity to contract at the time the deed was executed, or that it was without consideration, or that its execution was procured by fraud on the part of appellee.

We fail to find in the record any evidence of fraud on appellee's part in the matter of the conveyance; nor does it furnish any of a satisfactory character that the grantor was incapable of understanding the transaction. That his mind was enfeebled by age and the privations through which he had recently passed, was doubtless true; but his declarations made to persons of the neighborhood, before the execution of the deed, that he intended to requite appellee for what he had done for him by deeding him the land, as well as the promptness with which he requested the services of a drafts-

man to prepare the deed after arriving at appellee's house on the occasion in question, strongly indicate the formation in his mind of a fixed purpose to convey him the land, and intelligence and resolution in carrying that purpose into effect.

The evidence shows that the conveyance was based on a sufficient consideration. The $30 constituting the cash payment mentioned in the deed was much less than the aggregate amount appellee had previously furnished his father, and the obligation it imposed upon appellee to support his father was, of itself, a good, as well as a valuable consideration.

It is, however, insisted for appellants that appellee did not comply with his undertaking to support the grantor. This contention is not, in our opinion, sustained by the evidence. It is true the grantor did not remain at appellee's house until his death, which was about three months after the execution of the deed, but it was not appellee's fault that he did not do so. He did make appellee's house his home for several weeks after the deed was executed, and while there was fed, clothed and otherwise properly cared for, but he finally left without appellee's consent and betook himself to his former home where he, a few days later, became ill. Appellee was soon advised of his illness, went at once to see him, and from that time until his death ministered to his wants by providing him with medicines, food, raiment and nursing.

During the old man's entire illness appellee's care of him was personal and assiduous. Indeed, the latter only left his bedside to occasionally attend to his wife who was ill at the same time.

The evidence as a whole fairly shows that appellee did everything for his father, which, under the terms of the deed he was required to do. The contract was not only free from fraud or oppression, but in view of its provisions, evidenced by the deed, and of the grantor's age and consequent disability, it was not on his part an improvident one; nor was it unduly advantageous to appellee, for the grantor might have lived several years longer than he did, in which case he would probably have continued helpless longer than in the illness preceding his death, through which appellee cared for him. Moreover, the land does not more than compensate appellee for what he expended for the old man in the care he gave him, for, according to the weight of the

evidence, its value, when it was conveyed appellee, did not exceed $200.

Elisha Hopkins' wife did not join with him in the deed, therefore, appellee accepted the conveyance subject to her right of dower or homestead in the land, which at the time lessened its value to him. While it is true that the wife, after surviving the husband two years, died without claiming dower in the land, it could not have been known to appellee when he accepted the deed that she would not do so.

The facts of this case and the relation of the parties to it, make it strikingly like that of Dunaway, et al. v. Dunaway, 32 R., 29, in which a similar conveyance was upheld, upon practically the same grounds stated in this opinion.

There being no error in the judgment of the circuit court, it is hereby affirmed.