## Smith v. Berry, et al.

(Decided January 11, 1916.)

### Appeal from Daviess Circuit Court.

1. Appeal and Error—Aggregated Judgments—Jurisdiction.—Where judgments for money are severable and each is for a sum less than is necessary to give this court jurisdiction, they can not be added together so that the aggregate sum would confer jurisdiction, although the cases may have been consolidated in the trial court and heard together. (See Jordon v. Covington Bros. & Co., 125 Ky., 73.)

2. Mortgages—Absolute Deed as Mortgage.—The grantee in a deed to real estate, which is absolute on its face, but intended to be for the security of a debt, and therefore only a mortgage, is not entitled to the possession, occupancy, or rents of the premises, nor are any of those put in lien for the debt, the guarantor taking no rights greater than if the instrument had been an ordinary mortgage.

3. Forcible Entry and Detainer—Judgment of Eviction—Evidence.— A judgment of eviction in a forcible entry and detainer proceeding against the father with a curtesy or homestead interest in the premises is not binding upon his children, who are the owners in fee to the premises and who likewise have a right of homestead and occupancy therein; but if the children should be evicted under such judgment, it is competent evidence in behalf of defendant upon a trial of a suit brought against him seeking to recover damages for the eviction, which is charged to be maliciously done, this evidence bearing upon the question of malice involved in such suit.

4. Damages—Action for Wrongful Eviction—Question for Jury.— Where the evidence shows in such case that the grantee in the deed in good faith believed that he had a perfect title and a right to the possession, and had procured a judgment against the father in forcible entry and detainer proceedings, and that while he held such deed for a period of more than three years during which time he paid past and current taxes; repaired the premises;

kept the property insured; advanced money for the necessities of the occupants, etc., and there is no testimony of any act on his part manifesting any ill-will or injurious intentions toward the occupants; and nothing to show that the eviction was accompanied with any high-handed acts or insulting words; and that the contents of the house were exposed but for an hour or two, when they were cautiously removed by the defendant; there is nothing to show malice on the part of defendant, and in a suit against him by the children of the father for a wrongful eviction, the question of their right to recover punitive damages under such circumstances should not be submitted to the jury.

5. Forcible Entry and Detainer—Judgment of Eviction—Bar.—If, at the time of the execution of such absolute deed, the makers thereof agreed to pay the rent for the subsequent occupation of the premises and to occupy same as the tenants of the grantor in such deed, the judgment of eviction in a forcible entry and detainer proceeding against the parent will be a bar to a suit for damages by the children for the eviction, unless accompanied by unlawful acts, because in such case the children stand in privity with their parents and are bound by their contract as to such occupancy.

6. New Trial—Excessive Verdict.—A verdict in such a suit under the circumstances hereinbefore detailed awarding to the plaintiff actual damage for humiliation in the sum of $450.00 is excessive and sufficient to entitle the defendant to a new trial.

MILLER, SANDIDGE & MALIN and LA VEGA CLEMENTS for appellant.

LITTLE & SLACK, BIRKHEAD & WILSON and R. W. SLACK for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On January 20, 1909, the mother of appellees, Florence M. Berry, together with her husband, D. G. Berry, who was the father of appellees, executed and delivered to the appellant, J. W. Smith, a warranty deed, absolute on its face, to a certain house and lot in the city of Owensboro, Kentucky. Mrs. Berry acquired title to the property through a conveyance made to her by her husband in 1907, and at the time of the execution of the deed to the appellant, she was the owner in fee to same. In September following the date of the execution of the deed to appellant, Mrs. Berry died intestate, leaving surviving her, her husband and six children, the appellees herein, whose ages range from six to eighteen years. Whatever interest, if any, Mrs. Berry owned in and to said property was inherited by the appellees, subject to the interest which the law conferred upon the sur-

viving husband and father of appellees, D. G. Berry. The family had been occupying these premises for a number of years as a home, and after the execution of the deed to the appellant, they continued to so occupy it until the time of eviction herein complained of, and there also resided with them two sisters of Mrs. Berry, one of whom was Miss Ann Harben, and she continued to reside with the Berry family until the time of the eviction and up to the trial of these cases; she at the time being an unmarried woman and occupying the worthy position of watching after, nursing and caring for her nieces and nephews, which she seems to have done in a most commendable manner.

On January 2, 1912, the plaintiff instituted forcible entry and detainer proceedings against D. G. Berry, the father of appellees and who was head of the family, to recover possession of the house and lot, and in due time a judgment by default was obtained against the father and ordering the possession of the premises to be restored to the appellant. Some time later and before the 24th day of that month a writ of restitution was issued by the justice of the peace rendering the judgment and placed in the hands of W. J. Cole, the duly and regularly elected, qualified and acting constable for the magisterial district, and he, on the 27th day of February, in the afternoon about 2:30 o'clock, proceeded to execute said writ by removing from the house the contents thereof and placing same upon the grass plot between the sidewalk and the curbing of the street, and which household goods, were, within a short time thereafter, removed with the wagons of appellant and put into another house some few blocks away, and into which the appellees and their father, and their aunt, moved and took up their residence.

Three days before the execution of this writ and on February 24, 1912, the appellees, through their father as next friend, filed a suit in equity in the Daviess circuit court against appellant, alleging and charging that the deed which had been executed to the defendant therein, dated January 20, 1909, although absolute on its face, was intended to be, and had been agreed between the parties thereto, to be, only a mortgage for the security of a debt, and prayed the court to so adjudge. The appellant filed his answer in that suit denying the allegations of the petition and claiming that the deed was

absolute, and after preparation, and the cause having been submitted, judgment was rendered upholding the contentions of the plaintiffs in that suit and fixing the debt of the appellants therein, and ordering the property sold. From that judgment the appellant prosecuted an appeal to this court, and the judgment was, on November, 1913, affirmed, the opinion being reported in 155 Ky., 686.

On July 20, 1914, the property was sold under the judgment and was purchased by Miss Ann Harben for the sum of $1,325.00, and is claimed by her, for the use and benefit of the appellees.

On January 9, 1913, the infant appellees, by Miss Ann Harben as their next friend, filed separate suits in the Daviess circuit court against the appellant, and the adult appellees at the same time filed suits against him in the same court, in each of which, damages were sought to be recovered for what are termed the trespasses committed by the constable in executing the writ of restitution hereinbefore mentioned; it being charged that the appellant procured him wrongfully to remove the clothing, wearing apparel, pictures, and other personal effects of each of the appellees, and that the appellant, through the said constable, "wantonly, forcibly, unlawfully, wrongfully, maliciously and without plaintiffs' consent, threw all of plaintiffs' personal effects into Main street, etc." It is further charged that the constable, through the procurement of the appellant, did, at the said time, "maliciously and in a high-handed manner take possession of plaintiffs' homestead and domicile and deprived plaintiffs of the use thereof," he knowing at the time that plaintiffs owned the homestead therein and entitled to reside therein. It is furthermore charged that said actions were done with the malicious purpose of humiliating and injuring the feelings of the respective plaintiffs, and that they were each greatly humiliated and suffered "great mental pain and anguish," to the amount claimed in each petition, for which judgment was prayed. As the cause progressed each petition was amended so that the damages claimed therein were $1,500.00, or an aggregate, in the six suits, of $9,000.00.

The appellant in his answers denied the allegations of the petition, and in addition relied upon the deed of January 20, 1909, which at the time of the institution of the forcible detainer proceedings, or the judgment

therein, had not been attacked; and at the time of the eviction, although the suit attacking the deed had been filed three days theretofore, no judgment had been rendered therein. The allegations of the answers were denied by reply and the affirmative allegations in the reply were controverted of record. The cases were consolidated and heard together, and, upon trial, a verdict was returned in favor of each of the defendants in the sum of $450.00, upon which judgments were rendered, and from the order overruling the motion for new trial in the consolidated actions, this appeal is prosecuted. The appellant has also filed a motion in each case in this court praying an appeal from the judgments.

At the beginning it may be stated that the appeals granted by the court below are not available. These judgments are each for money and they are for sums less than $500.00; they are each separate and distinct and can not be added to each other for the purpose of making the aggregate sum sufficient to give this court appellate jurisdiction. (See Covington Bros. & Co. v. Jordon, 125 Ky., 73, and cases therein cited). It results, therefore, that the only method by which an appeal may be prosecuted is under the act of 1914, giving this court the right to grant an appeal when the amount involved is not less than $200.00 nor more than $500.00 upon motion being made therefor in this court within the time provided by the law governing appeals. Under rule 20 of this court, adopted since the taking effect of the act of 1914, it is provided that:

"If, on considering the case, it appears to the court that an error was committed by the lower court prejudicial to the substantial rights of appellants, *   *   * the motion to grant an appeal shall be sustained."

We have concluded that the lower court committed errors prejudicial to the substantial rights of the appellant and the motion for an appeal in each of the cases is sustained and the appeals are granted.

It is insisted by appellant that the judgment in the forcible detainer proceedings furnishes a bar to these actions, because, as he contends, in the absence of any agreement to the contrary he, having an absolute deed at the time to the premises and vested with the legal title, was entitled, contrary to the rule existing between mortgagor and mortgagee, to the possession of the premises, and that where a lien is given by such an

instrument as an absolute deed, although agreed to be a mortgage only and for right of redemption to exist, the deed puts in lien the possession and right of occupancy of the premises, as well as the rents issuing therefrom. The attorneys for both appellant and appellees seem to think that this is a serious question and one of some doubt and both devote a considerable portion of their briefs to its consideration. We are cited to no authority emanating from this court in support of the contention. Reference is made by counsel for appellant, however, to the text in 27 Cyc., 1029, which is as follows:

"In the absence of an agreement between the parties in regard to possession of the premises, it has been held in some jurisdictions that the grantor is not entitled to hold the possession against the demand of the grantee; for an absolute deed, although intended as a security, differs from an ordinary mortgage in this particular, and must be regarded as vesting both the legal title and the right of possession in the grantee." This quotation is immediately followed by the author with the following:

"The grantee, like any mortgagee in possession, must account to the grantor for the rents and profits of the property." The text relied upon by appellant is supported by the courts of only two states, those of Iowa and Michigan. But in the same note the rule in cases from Kansas, Nebraska, Indiana, New York, and in the case of Cox v. Radcliff, 105 Ind., 374, it is held:

"That where an absolute deed under such circumstances might give the grantor the prima facie right to the possession, still the facts showing it to be only a mortgage might be shown in a proceeding to recover the possession as a complete defense." From the same volume of Cyc. and on page 1235, we quote as follows:

"It is generally held that one who is in reality a mortgagee, although the conveyance to him is in the form of an absolute deed, has no greater rights than a mortgagee under a mortgage in the usual form and, therefore, is not entitled to possession of the premises, if not voluntarily surrendered to him by the grantor."

The text being supported by a number of authorities from various states, including that of Radcliff v. Folsom, 58 Iowa, 473, which is a later case from that court than the one supporting the text upon which appel-

lant relies, thus showing a modification of the doctrine as originally held in that state.

It has long been the law in Kentucky that as between the mortgagor and the mortgagee, the legal title was held by the former, and he was entitled to all the benefits and rights given to such title-holder, and that the mortgagee acquired only an equitable lien to the extent of his debt and the right only to subject the property in payment of his debt. He also has other rights flowing from his mortgage lien, such as the right to protection against waste and destruction of the mortgaged property, none of which have any application to the question in hand. We think it the better rule and in more conformity with the objects and purposes of a mortgage and more in accord with modern jurisprudence, to hold that in Kentucky the grantee in a deed absolute upon its face, but given only as a mortgage, has no greater rights than the ordinary mortgagee. It results, therefore, that this contention of appellant can not be upheld.

It will then be seen that at the time of the procuring of the judgment in the forcible detainer proceedings, the appellees having inherited their mother's interest in the premises, had the right of possession thereof as between themselves and the appellant, and in as much as they were not parties to that proceeding, the judgment therein furnishes no bar to these actions, unless the appellees were occupying the premises under an agreement by which the appellant should receive rent for the premises. The record in the forcible detainer proceedings, although not a bar to this suit, is admissible to show the intent of the appellant in procuring the eviction and to rebut the charge of malice on his part.

The principal grounds relied upon for a new trial are: (1) incompetent evidence introduced before the jury over the objections and exceptions of appellant; (2) improperly instructing and refusing to properly instruct the jury, and (3) the verdicts are excessive. We will consider these in the order named.

First: During the progress of the trial the attorneys for appellees upon cross-examination of the appellant, interrogated him as to whether or not, upon the day of the sale of the land, as hereinbefore stated (which was eighteen months after the eviction), he had not endeavored by persuasion to procure one Hazel not to sign the purchase bond of Miss Ann Harben for the premises

which she had bought at the judicial sale. Sub-sequently they were permited to introduce Mr. Hazel for the purpose of proving that the appellant on said occasion had approached witness. He testified over the objections and exceptions of appellant, as follows: "What question did he make to you? A. He told me that if I did not go on the bond she could not give bond, and I had always been a friend of his and he had been a friend of mine, and I told him I never had said a word to the people in my life about the bond, and my son's mother-in-law came to me and wanted me to go on the bond and I had promised her and could not go back on her." This testimony was, no doubt, admitted as bearing upon the question of malice, if any, which plaintiff entertained and exhibited at the time of the eviction. Manifestly, this was grievous error. We have the explanation which appellant made as to what he said to witness Hazel and why he said it, and conceding for the purpose of argument that the testimony standing alone could be admitted as evidence of malice, it could have no relevancy upon the condition of the appellant's mind and his feelings towards the appellees some eighteen months previous thereto. Many things might have happened during that time to have engendered in him malicious purposes and designs toward the appellees, although previous to any such occurrences he may have been kind, generous and just to them, and we can not imagine any more poisonous testimony in a case of this kind, and which would be more calculated to inflame the minds of the jury than that referred to. It no doubt contributed very largely to aggregate the damages of $2,700.00 in this case. We deem it unnecessary to fortify this position by any authorities, as the admission of the testimony under the circumstances violates, and is at war with, all rules of evidence to which we have been referred, or with which we are familiar; these rules being that the testimony must have some reasonable probative force looking to the establishment or denial of the fact in issue. We, therefore, hold that this testimony should not have been admitted.

Second: The court upon the trial and upon its own motion, gave to the jury instructions Nos. 1, 2, 3 and 4, to all of which the appellant objected and excepted. Instruction No. 1 is substantially a peremptory instruction to find for the appellees in nominal damages. The

only criticism we find of this instruction is that the court should not have expressly stated that the appellees were ejected from "their home," or that they were "in rightful possession thereof," or that "defendant wrongfully caused them to be ejected therefrom," but the instruction should have told the jury to find for each of the appellees in nominal damages, unless they were occupying the premises under the agreement made by their parents to pay to the appellant rent for such occupancy, as defined in another instruction (the designation should here be given), in which event if the jury should so believe, they should find for the defendant. The language quoted is objectionable and when announced from the bench gives emphasis and prominence, not only to the rights of the parties, but to the character of appellant's act in causing the writ of restitution to be executed, and is calculated unconsciously to inflame the minds of the jury, and, therefore, should have been omitted. Instruction 2 is correct in so far as it permits the recovery of compensatory damages for humiliation, but in so far as it permits the recovery of punitive damages, it is erroneous. There is nothing in this case to justify the recovery of punitive damages. We have heretofore seen that the appellant held this deed three years before taking any action. It is shown without contradiction that during that time he performed and did many acts of kindness to the appellees and upon occasion came to the rescue of the family in a financial way when the prospects were dark and gloomy for them. When the mother of appellees died, it was he who furnished the means to deposit her remains in their last resting place. After procuring the deed he made improvements, at least to some extent, upon the premises; he assumed and paid past due taxes on the place for five years, preceding the execution of the deed; he paid taxes up to the time, so far as this record shows, of the sale of the property, and kept it insured, and provided during said period a toilet in the premises equipped with water, and perhaps numerous other things looking to the comfort of the occupants of the building, including appellees, and all this without the payment of any rent or interest. These acts seem to have been rendered necessary because of the indolence and thriftless character of D. G. Berry, the father of appellees, who seems to have been more or less dissipated and shiftless. The appellant is the uncle

of appellees by marriage, having married the sister of their father, and although an uncle by consanguinity, we see nothing in the record to dispel the belief that he fulfilled that relationship most commendably. Malice in such cases as this is different from that term as used in the law relating to slander and libel, or in suits for malicious prosecution, wherein it may be presumed in the one class, from the falsity of the language used by the defendant, when not privileged; and in the other from want of probable cause. There can be no presumption of malice in this character of case. It must be proven and it is broader and deeper than the malice, which is a necessary ingredient in the character of cases mentioned. There must be some ill-will, or a desire to unnecessarily or wrongfully inflict injuries, harm or damage, and must eminate from a mind desiring to harass, humiliate, or oppress in some manner the party against whom it is directed. We see nothing in this record to show that the appellant harbored any such state of feelings toward the appellees at the time of the procuring and execution of the writ. On the contrary, he withheld the execution thereof for more than thirty days after the judgment, during which time he was endeavoring to collect at least a portion of his money, and if that could not be done, to negotiate for a place into which the appellees might move. In furtherance of this negotiation he selected a house and advanced one month's rent and offered to continue to pay a portion of the rent as long as appellees occupied it. He was acting under color of right at the time of the eviction and there is nothing to show but that he in good faith believed (as he testified), that he was entitled to the possession of the property, and that in law he was entitled to obtain it because of the absolute nature of the conveyance. Because he was ignorant of his legal rights his conduct and actions (although technically wrong) should not be characterized as malicious and he mulcted in an unjust verdict, based perhaps in part upon the idea that his actions were malicious. These observations dispose of the necessity of considering instructions 3 and 4, given by the court.

It was contended and testified to by appellant that after the execution of the deed to him of January 20, 1909, D. G. Berry and Florence Berry, the father and mother of appellees, agreed to occupy the premises as

his tenants and to pay rent therefor to him. That appellees' occupancy was controlled by this agreement, they being the children of one of the parties and in privity with them, and, he therefore, had a right to procure the writ. This, however, was denied and an issue upon this question was made. There was some evidence looking to the establishment of this agreement and the appllant offered instructions submitting this feature of his defense to the jury, which the court refused to give. In this the court erred, for if it be a fact that when the deed was executed to the appellant, the parties agreed to occupy the premises as his tenant until his debt should be paid, the appellees standing in privity to the lessors would be bound thereby, and such an agreement would have justified the eviction and would have been a bar to these suits, unless the eviction, was accompanied by unnecessary insulting and harassing acts, for which there is no proof in this case. An instruction properly submitting to the jury this defense should be given, if the evidence authorizes it.

Third: It is complained that the verdicts are excessive. In this we concur. What we have said eliminates the question of punitive damages, leaving only for the determination of the jury the compensatory damages for what humiliation, if any, that may have been suffered. We will not elaborate this feature of the case, contenting ourselves with saying that it is difficult for us to see how these plaintiffs, for the brief time that their respective possessions, some of which unfortunately were limited, remained unhoused could have possibly been humiliated to the extent of $450.00. The wrong as we have seen was but a technical one, and for which the actions will lie; but the law is not an engine of oppression, but strives like the blind goddess, to deal out to those who have occasion to invoke its application, even-handed justice and to allow no one to profit by the misapplication or non-application, in proper cases, of any of its rules. We think the latter has been done in this case and that the verdicts are so excessive as to "strike the mind at first blush" that they were rendered under the influence of passion and prejudice on behalf of the jury.

The judgments are each reversed with instructions to proceed in accordance with this opinion.