## Wood, et al. v. Moss, et al.

(Decided June 19, 1917.)

### Appeal from Montgomery Circuit Court.

1. **Deeds—Evidence—Burden of Proof.**—A deed between an aged and infirm person and one who has him in charge, and between whom there exists confidential relations, will be closely scrutinized, and the burden is upon the vendee to show the complete fairness of the transaction and that the deed was obtained without any improper methods or inequitable incidents, and was the free and voluntary act of the vendor. But this rule does not apply with the same rigor to transactions which are testamentary in their character, and which convey no present interest to the vendee but whose interest is postponed until the death of the vendor.

2. **Appeal and Error—Conveyances—Finding of Chancellor.**—The findings of a chancellor upon issues of fact will not be disturbed on appeal in cases where there exists only a doubt as to the truth of the matter, but if such findings are against the weight or the preponderance of the evidence, and is clearly contrary thereto, they will be reversed by this court. Evidence examined in this case and found that the conveyances which are attacked because of a want of mental capacity and of undue in-

fluence exercised over the vendor by the vendees are not invalid for either of those reasons and they are therefore upheld.

3. Deeds—Undue Influence.—Undue influence in law is such as dethrones the understanding and substitutes the will of another for that of the one influenced so as to constrain him to do that which he would not do otherwise; but any reasonable influence obtained by acts of kindness or appeals to the understanding but not destroying free agency so as to compel him to do against his will that which he would otherwise refuse to do is not in law undue influence.

4. Deeds—Undue Influence—Burden of Proof.—Deeds executed under circumstances mentioned in the first subdivision above must be supported by clear proof, and the burden is upon the vendee to show conditions-justifying the court in upholding them; but although there may be error in the trial court upon the question of the burden of proof, still if this court is convinced from the entire record that the judgment is correct, it will not be reversed for such error.

5. Appeal and Error—Jurisdiction—Adding Amounts of Judgments.—Where judgments are severable and rendered in separate suits which were consolidated with each other, and they, or some of them, involve amounts insufficient to give this court appellate jurisdiction, the amounts involved in each .of them cannot be added together so as to make the total sum sufficient for appeal, and the appeal from those having insufficient amounts will be dismissed.

ROBERT H. WINN and CHARLES D. GRUBBS for appellants.

JOHN G. WINN for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming the case against appellees jointly and dismissing the appeals in the two cases against them separately.

Major A. T. Wood died testate and a resident of Montgomery county on February 3, 1915. He was about eighty years of age at the time of his death, and his wife with whom he had lived in happy union nearly sixty years preceded him to the grave about eighteen months.

Several years before, Henry Wood, the youngest son of Major Wood, died, leaving a widow, the appellee and defendant, Mrs. Iva D. Swaffield (she having married again), and after the death of her first husband, at the request of Maj. Wood, she and her children, together with appellee and defendant, Miss Anna K. Moss, who had been living for many years with Mrs. Henry Wood as a member of her family, moved into the house with Major Wood and wife, where they continued to live until the death of the former.

On June 20, 1914, while Major Wood and the two defendants were residing in the former's residence (and before Mrs. Wood's second marriage) he executed to the defendants a deed to a house and lot located on Winn street, in the city of Mt. Sterling. The deed was prepared by the Major himself, who was a lawyer by profession, and for many years was prominent as a member of the Kentucky bar. He had also filled positions of distinction, and at one time was his party's candidate for Governor of the Commonwealth.

At Christmas, 1914, he gave to defendant, Iva D. Swaffield, a small diamond brooch, and to defendant, Anna K. Moss, some small diamond ear rings. After his death some of the devisees and legatees under his will, all of whom were his children except one, who is the widow of a deceased son, brought suit in the Montgomery circuit court against defendants, seeking to cancel the deed to the house and lot upon the ground that the maker of it was mentally incapacitated at the time to do so and was unduly influenced to execute it. Separate suits were brought by the same plaintiffs against each of the defendants to recover the jewelry given to them as Christmas presents, or its value. Each of the latter suits was for a sum less than $200.00, and they were consolidated with the one brought to cancel the deed, and upon final hearing all of the petitions were dismissed, and to reverse that judgment this appeal is prosecuted.

The same grounds are alleged in the two suits to recover the jewelry as are made in the suit to cancel the deed, and the answers of the defendants in all of the suits put in issue the allegations of the petitions.

The only daughter of the decedent, Mrs. Cox, did not join in either of the suits, nor did the executor of Maj. Wood's will, but the latter was made a defendant in each of them.

Much feeling seems to have been engendered on the part of plaintiffs, and the attorneys for the litigants have exhibited great labor and much research in the preparation and presentation of the cases, but when sifted down the issues are short, and, to our minds, reasonably plain.

Within the due limits of this opinion it would be impossible to refer to or undertake to analyze the testimony of the various witnesses, and as the disposition of the case turns chiefly upon questions of fact, we will undertake only to give our conclusions with such references to circumstances as we deem necessary to fortify them.

Previous to 1911, Maj. Wood was United States Pension Agent for the U. S. Government, with his office located in Louisville. After retiring from that office, he moved to Mt. Sterling, where he continued to reside in the manner stated until his death. Those of his children who were living had families of their own, and none of them, for some reason, either went into his house to reside, or had him to reside with them. He was a man of excellent mind, a wide reader, and kept posted on all current events, and what is more creditable than all else, he seems to have been a man of high appreciation and of the broadest kindness. This not only endeared him to the defendants, who were constantly associated with him in their joint residence, but caused them to reciprocate by extending to him all needed attentions and the greatest kindness, exhibiting itself in deep solicitude for his comfort and enjoyment. With his disposition, he appreciated their treatment, and his gratitude caused him to consult with his most intimate friends and long associates as to the advisability of making the deed in contest. To such friends he stated in substance that he very much desired to do so, but he was aware that when the facts should be discovered that the plaintiffs here would raise a disturbance, with which, in his old age, he did not desire to be troubled, and he informed his friends that he expected to make the deed, but that he wanted it kept secret as long as he lived. To these witnesses he stated that "he was not physically able to stand the disturbance and the girls (defendants) would be."

Twnty-two witnesses testified on behalf of defendants, seventeen of whom were neither parties nor related in any manner to them. Among the seventeen were people who had known Maj. Wood for a great number of years, and who had lived neighbors to him. They include people of all occupations from barber to priest. Physicians and lawyers, as well as housewives and bankers, are found among them, and their testimony is of one accord, that in their opinion Major Wood was amply competent to execute the deed at the time he did, and that he was fully aware not only as to the amount of property which he held, but was cognizant of the objects of his bounty, and his duty to them, but also determined in his purpose to exhibit the gratitude which so much beautified and adorned his nature by executing the deed.

For the plaintiffs only three witnesses besides themselves and their relatives gave testimony in the case.

The three unrelated witnesses include the notary public who took the acknowledgment, the jeweler who sold the diamonds, and a physician. The physician's testimony in chief is not of the most convincing nature, and upon cross-examination was largely weakened by the development of the fact that his associations with Major Wood were extremely occasional and of short duration. The other two testified strongly for defendants.

The testimony of plaintiffs and their relatives is greatly impaired by reason of the fact that before and following the date of the deed some of them were endeavoring to purchase other real estate from the decedent, but he appears to have had mind enough to decline their propositions, and others of them procured him to go their security at different banks from which they borrowed money. Other circumstances are found in their testimony, which, according to our view, weaken it upon the main point; but, however that may be, the overwhelming weight of testimony, from witnesses detailing facts and giving their opinions, is to the effect that Major Wood was fully capable mentally to make the transactions complained of at the times they occurred.

It is insisted that upon occasions he would cry, and this is urged as conclusive proof of mental weakness. However, in each instance when he is shown to have shed tears it was because of the mention of the name of his departed wife, to whom he is shown to have been most affectionately attached. Paroxysms of unnecessary and unexplained weeping are sometimes evidence of lost mentality, but we have yet to learn that when the tears spring from the natural fountain of devotion for departed loved ones this may be considered evidence for branding one as a *non compos mentis*. Indeed, it has been said by a great writer that: "There is a sacredness in tears. They are not the mark of weakness, but of power. They speak more eloquently than ten thousand tongues. They are the messengers of overwhelming grief, of deep contrition, and of unspeakable love." And by another: "Hide not thy tears; weep boldly and be proud to give the flowing virtue manly way; it is nature's mark to know an honest heart by." And yet another: "Sooner may'st thou trust thy purse to the professional pickpocket than to the man who boasts of eyes to which the heart never mounts in dew." Under the circumstances which caused the tears to flow from Major Wood's eyes we would slander such truisms spoken by the sages of literature

were we to give to them the effect contended for, and we decline to do so.

It is again insisted that Major Wood sometimes in his conversations with the defendants, and especially with Miss Moss, overstepped the bounds of due propriety in some of the language which he used, and that he sometimes mentioned the subject of another marriage, even going to the extent upon one occasion of suggesting such a matter to her, which she promptly declined, stating to him that she loved him as a father, but could not as a husband. Considering the great intimacy and familiarity existing, we see nothing in the remarks complained of to indicate an abnormal mind, and if the Major's solicitude about his lost manhood and his sometimes expressed desire to marry again can be taken as evidence of insanity, we fear that a large proportion of the male population could be justly charged with being *non compos.*

Upon the issue of undue influence there is no direct testimony, except to show that all of the influence which defendants attempted to exercise was that which grew out of kindness, tenderness, and an affectionate solicitude for the Major's welfare. Practically every witness who testified upon both sides of the case stated in substance that Major Wood was as much attached to the defendants as most parents are to their children, and that their feelings for and conduct toward him were tempered with the same affection that a child holds for its parents. Indeed, they always referred to him by no less endearing term than "father." There is no evidence of any act on the part of the defendants being prompted by motives of gain, selfishness or personal aggrandizement; nothing to show a secret purpose to overreach or deceive or to impose upon Major Wood in order to induce him to do that which he would not otherwise do. On the contrary, he was the first one to mention his purpose to execute the deed, and, as shown, he prepared it himself, and consulted with his lifelong friends before doing so as to its advisability. There is therefore no room for the application of the doctrine as laid down in the cases relied on of McDowell v. Edwards, 156 Ky. 475; Miller v. Taylor, 165 Ky. 463; Kelly v. Fields, 167 Ky. 796, and many other like ones from this court wherein the features mentioned are found to exist. The facts of this case bring it rather within the rule found in the case of Collier v. Dundon, 164 Ky. 345, wherein, under facts even more strongly indicative of the exercise of

undue influence than are presented by this record, the court said:

"The most that can be said of the evidence for plaintiffs is that Mrs. Dundon did have some influence over her uncle. It must be remembered, however, that any reasonable influence obtained by acts of kindness or by appeals to the feeling or understanding, but not destroying free agency, is not undue influence. Undue influence over the mind of another is such as to destroy his free agency and to constrain him to do against his will what he would otherwise refuse to do. Watson's Exor. v. Watson, 137 Ky. 25, 121 S. W. 629. There was an utter failure to show that the deed in question was the result of any influence, much less undue influence, exercised by Mrs. Dundon." See, also, Sellars v. Sellars, 162 Ky. 9; Best v. House, 113 S. W. (Ky.) 849; Wathens v. Skaggs, 161 Ky. 604.

In addition to what has been said, there is presented to us for review the finding of the chancellor upon the issues of fact. The rule governing the right of this court to review such adjudged issues and prescribing the weight to be given to the court's finding has been often repeated, and is fully understood. In substance, it is, that if the testimony creates only a doubt in our minds, such doubt will be resolved in favor of the chancellor's findings, and unless his judgment is against the preponderance of the testimony, it will not be disturbed. McDowell v. Edwards, and Miller v. Taylor, *supra,* and cases therein cited. This being the rule in equity cases, the judgment of the trial court as to where the burden lay, under the pleadings as made up, can have but little effect on appeal, as this court will look at and determine from all the evidence the character of judgment that should have been rendered. We mention this because considerable complaint is made that the court below treated the case as if the burden was upon the plaintiffs. We see nothing in the record to indicate this, except the fact that after the pleadings had been made up and the evidence taken it declined to permit the plaintiffs to file an amended petition seeking to bring the case under the rule so firmly adhered to by this court that transactions between persons in confidential relations shall be closely scrutinized and that the burden is upon the one seeking the benefit of the contract to show its complete fairness. If the deed in question could be construed to be such a contract as comes within that rule, we are still convinced that the entire proof met its requirements.

Two facts which cannot be overlooked in this record are that Mrs. Cox, Major Wood's only daughter, declined to join in these suits, and the executor of his will was so firmly convinced of the unsoundness of plaintiffs' claim that he declined to become a party to any proceeding looking to its establishment. But, however this may be, after a thorough reading of the record, and giving due weight to the chancellor's finding, we are not inclined to disturb the judgment upon the two issues of mental incapacity and undue influence as affecting Maj. Wood at the time he executed the deed.

An insistance is made that although the deed recited (and which was inserted by the vendor himself) that the defendants were to "nurse and take good care of A. T. Wood in sickness and when he is unable to take care of himself," there was no consideration therefor, as there already existed a contract with the defendant, Mrs. Swaffield, to perform the same services, but counsel for plaintiffs are evidently mistaken in this, for the services agreed to be performed under her contract were that of board and looking after his room, and did not include the things mentioned in the deed. However this may be, the transaction is an executed one, and notwithstanding the services for nursing were mentioned in the deed, it could have been legally made and executed as a gift. No beneficial interest was obtained by the vendees until after the vendor's death, as he expressly reserved the right of possession of the house and lot conveyed, and to collect rents therefrom as long as he lived. While this did not destroy the effect of the conveyance as a deed, it did have the effect to make it testamentary in character and therefore did not require the same mental capacity to execute it as is required in one made between parties dealing at arm's length for an agreed consideration, nor is it required that such a deed should be supported by a sufficient consideration, and especially after it is executed. See authorities, *supra,* and 13 Cyc. 530-534; Dunaway v. Dunaway, 32 Ky. Law Rep. 29; Hopkins v. Blackburn, 144 Ky. 839.

As we have seen, the two separate suits brought against each of the defendants to recover the jewelry involve sums less than $200.00, and although they are consolidated with the suit to cancel the deed to the house and lot, the amounts involved in them cannot be added to the suit with which they are consolidated, or to each other so as to give the jurisdictional amount for an ap-

peal to this court. Covington Bros. & Co. v. Jordon, 125 Ky. 73; Smith v. Berry, 167 Ky. 646. The appeals in those two cases are therefore dismissed, and the judgment dismissing the petition seeking to cancel the deed for the house and lot is affirmed.