## Lockhart, et al. v. Justice.

(Decided June 10, 1924.)

### Appeal from Pike Circuit Court.

1. Limitation of Actions—Action for Relief for Fraud or Mistake Must be Brought in Ten Years.—Under Ky. Stats., section 2519, utmost limit within which an action for relief from fraud or

mistake · may be brought is 10 years, unless facts are brought within exceptions mentioned in sections 2506, 2525, relative to. disability.

2.  Deeds—Properly Adjudged that there was Not Sufficient Evidence to Establish Incompetency.—In action to cancel a deed, chancellor held to have properly adjudged that there was not sufficient evidence to establish that grantor was of unsound mind.

3.  Deeds—Transfer of Property to Child Regarded with Suspicion as Regards Undue Influence.—Conveyance of lands by father to son is regarded with suspicion, and mere inadequacy of consideration. or false statement in deed as to consideration is sufficient to create presumption that transaction is result of undue influence ·and to cast burden of proof on grantee.

4.  Deeds—Sufficiency of Consideration Plays no Part in Action by Heirs After Contract Executed.—Where land was. conveyed· to son in consideration of promise to support for life, contract became ·executed at. death of father, and question of sufficiency or insufficiency. of consideration could play no part in action by heirs to set aside conveyance.

5.  Deeds—Finding Against Undue Influence Held Proper.—In action by. heirs of grantor to set aside a deed to his son, finding by chancellor that there was no undue influence exercised held proper under evidence.

STRATTON & STEPHENSON for appellants.

PICKLESIMER & STEELE for appellee.

OPINION OF THE COURT BY SANDIDGE, COMMISSIONER—
Affirming in part and reversing in part.

James A. Justice, a resident of Pike · county, Kentucky, died some time in the year. 1920. Prior to his death he had conveyed lands to· his son, appellee, Bud Justice, by two deeds, the first dated February 11, 1911, and the second April 19, 1917. The consideration recited by·the deed for the first conveyance was $500.00 cash; that by the last $100.00 cash, and the agreement by the son to take care of his father the remainder of his life. By the last deed the grantor reserved to himself the use and control of the land conveyed during his life and the right to sell and dispose of the timber thereon as he pleased. After the death of James A. Justice, appellants, all of his surviving heirs, except appellee, brought suit in the Perry circuit court against him to cancel the two deeds above mentioned upon the ground of mental incapacity and undue influence. The issues were made by a traverse, and with reference to the 1911 deed appellee

pleaded the five and ten year statutes of limitation. Upon the trial of the case, the chancellor dismissed appellants' petition and they have appealed from that judgment.

Under section 2519 of the Kentucky Statutes of 1922 the utmost limit within which an action for relief for fraud or mistake may be brought is ten years, and under that section appellants' cause of action, in so far as it related to the deed of 1911, was barred, unless the facts are brought within the exceptions mentioned in sections 2506 and 2525 of the statutes, by both of which it is provided that if at the time the cause of action accrues the person entitled to bring it is of unsound mind there is allowed an additional period of three years after the removal of the disability in which to institute the action. On the facts produced in evidence, the chancellor below adjudged that there was not sufficient evidence by appellants to establish that James A. Justice was of unsound mind or mentally incapacitated to execute either the deed of 1911 or that of 1917. No question as to competency or incompetency of evidence is presented, as the parties, plaintiffs and defendant, testified fully as to all their conversations, transactions with and acts done or omitted to be done by the decedent without objection or exception. The testimony introduced for appellants as to the mental incapacity of their father consisted solely of their own testimony. All of them testified in the nature of conclusions that for twenty years before his death their father did not have sufficient mind to transact business or to know what he was doing or to make the deeds in question. They did not testify, however, as to anything their father said or did upon which they or we can reasonably base that conclusion. For appellee a number of the friends and acquaintances and close neighbors of James A. Justice, including a licensed practicing physician, who resided in his neighborhood, were introduced and without exception they testified that James A. Justice throughout his life was a person above the average in intelligence. It does appear that during the last twelve or fifteen years of his life he was not in the best of health, although it seems he was never confined to his bed or home by illness. He appears to have had a great deal of trouble visited upon him during his life. Two of his sons were killed and a third wounded in an election fight that occurred some twenty years before his death. A son-in-law appears to have been indicted for murder. Others of them appear to have engaged in difficulties re-

sulting in criminal prosecutions against them, and others to have been involved in civil litigation. The testimony discloses that decedent talked a great deal about these troubles that had befallen him; but no witness, aside from his children who would profit by the testimony, testified that he ever talked in any other than a natural way about these matters, or that they had the effect of impairing his mind to any extent. Under this state of facts, we are of the opinion that the chancellor properly adjudged that there was not sufficient evidence to establish that James A. Justice was a person of unsound mind at the time he executed the deed of 1911 or that of 1917, and hence the plea of limitation as to the deed of 1911 must be upheld and the judgment as to it affirmed on the plea of limitation.

With reference to appellee procuring the execution of the deed of 1917 by undue influence, we are mindful of the fact that, owing to the relationship between the parties, transactions of the character here presented are regarded with suspicion and that mere inadequacy of consideration or false statement in the deed as to the consideration is sufficient to create the presumption that the transaction is the result of undue influence and to cast the burden upon the grantee under such circumstances. It will be observed, however, that the deed of 1917 was executed not only for the recited cash consideration of $100.00, but for the further consideration that the grantee should take care of the grantor during the remainder of his life, and that by this deed the grantor reserved to himself the use and control of the lands conveyed during his life, as well as the right to sell and dispose of the timber thereon as he might desire.

Considering a deed with a similar provision, in Wood v. Moss, 176 Ky. 419, we said:

"While this did not destroy the effect of the conveyance as a deed, it did have the effect to make it testamentary in character and therefore did not require the same mental capacity to execute it as is required in one made between parties dealing at arm's length for an agreed consideration, nor is it required that such a deed should be supported by a sufficient consideration, and especially after it is executed. See authorities, *supra;* and 13 Cyc. 530, 534; Dunaway v. Dunaway, 32 Ky. L. R. 29; Hopkins v. Blackburn, 144 Ky. 839."

There is no question raised in the evidence about appellee having lived up to the agreement he made to take care of his father. None of the appellants themselves testified that he failed in any particular to do so. The contract had been executed at the time this lawsuit was brought, and the question of sufficiency or insufficiency of the consideration can play no part in the determination of the question here presented. The appellants themselves testified to no facts to support their contention that appellee exercised undue influence over his father in the procurement of the deed other than that all his life he had lived upon the farm with his father; had been kind and attentive to him and solicitous of his welfare; had worked his farm and had seen to it whenever he desired to go anywhere suitable conveyance was furnished him, and appellee usually accompanied him. It appears that as the other children reached their majority and married, they moved off of the farm, and, with the exception of one, out of the immediate neighborhood in which James A. Justice resided. From the testimony, appellee seems to be the only one of his children who had any regard for his welfare. The other children visited his home only at very infrequent intervals. One of the daughters testified that she had never been in his home after the death of her mother, and that occurred some ten years before his death. One daughter visited him only twice in the last eight years of his life. Once a year seems to have been about the average for the rest of them. Two of appellants, who were his grandsons, and who were reared by him and lived in the home with him until about the time the deed of 1917 was executed, testified by way of conclusion that appellee dominated and controlled decedent about everything, but they did not testify to any facts upon which they could reasonably base that conclusion. One of them testified that appellee ran him off from the home of decedent in order that he might get all the "old man," as he called his grandfather, had. But he was forced to admit on cross-examination that at the time he left decedent's home appellee begged him to remain and take care of his grandfather the rest of his days. The witness had then been married only a short time and was living in the home with decedent at the time. It was after he left, over the protest of appellee, the decedent contracted with appellee to take care of him the rest of his life and executed the deed of 1917 in consideration of his so doing.

The disinterested witnesses, the friends and neighbors, including the deputy clerk who prepared and took decedent's acknowledgment of the deed in question, all testified that decedent was a man above the average in intelligence at the time and that the deed was his voluntary act. They testified as to repeated conversations with decedent in which he spoke of the kindness of appellee to him, and stated that he would never be able to pay him sufficiently for what he had done for him. Two witnesses testified that he told them he had deeded appellee the land in question for what he had done for him prior to that time and to pay him for caring for him the remainder of his life. The land covered by the deed in question belonged to decedent. He had the right to dispose of it as he desired. He contracted with appellee in 1917 to care for him the rest of his life, and in consideration of his doing so he deeded him the land in question, reserving the use and control of it the remainder of his life.

The court is unwilling to say, under the facts disclosed by this record, that appellee, Bud Justice, when decedent's other children had deserted him, by care, attention and kindness to his father in his old age, unduly influenced him to execute the deed in question. The learned chancellor had the advantage of knowing the parties who testified, their standing, character and extent to which they were credible as witnesses, and from the evidence heard in the case adjudged that no showing was made either of mental incapacity or undue influence sufficient to set aside the deeds in question, and we unhesitatingly, in the light of the evidence, as we read it, concur in the conclusion reached by the chancellor.

It does appear that when James A. Justice died he owned certain real estate which he had not disposed of, and under the prayer of appellants' petition the chancellor should have adjudged either a sale or a division of it. Appellee did not controvert their right to have it either sold or divided. To the extent that the judgment did not dispose of the property owned by decedent when he died, it should be reversed; but in so far as the judgment dismissed appellants' petition to the extent that it sought to cancel the deed of 1911 and that of 1917 from James A. Justice to appellee, Bud Justice, the judgment of the court below is affirmed, and the cost of the appeal will be taxed against appellants.