## Carter, et al. v. Flegle, et al.

(Decided June 24, 1921.)

### Appeal from Carlisle Circuit Court.

1. Equity—Issues out of Chancery—Discretion of Chancellor.—In a purely equitable action a party is not entitled as a matter of right to a trial by jury of issues of fact, and if such trial be had the verdict is merely advisory and the chancellor may disregard it.
2. Husband and Wife—Property Accumulated by Husband in Wife's Name.—Where it is shown in an action for discovery that the husband, who has failed in business and is largely indebted and who receives a good salary and is an active business man, has accumulated nothing in his own name, but has been conducting business in the name of his wife, who kept the house but did not attend to business on the outside and who had no property nor income, and accumulated property in her name which she claims against his creditors, the property so accumulated by the husband in the name of his wife will be subject to the claims of creditors of the husband.

J. KELLY SMITH and JESSE NICKOLS for appellants.

J. D. VIA, JOHN E. KANE and M. S. SHELBURNE for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

The partnership firm of Flegle Bros., of Arlington, Ky., failed in 1911, involving their sureties, Carter and Hobbs, to the extent of $16,000.00, which was paid by them. From property of the partnership the sureties realized all but about $4,000.00 of the judgments they had to pay. Then Carter died leaving several heirs, who later caused an execution to issue from the office of the clerk of the Carlisle circuit court for $2,098.66, averred to be the Carter heirs part of the Flegle indebtdeness. This *fi fa* was duly returned to the office from whence it issued endorsed "No property found to make this *fi fa* or any part thereof." On this return the Carter heirs brought this equitable action in the nature of discovery and sued out a general order of attachment against the property of the defendants, C. E. and Jake Flegle, to which was joined the following prayer:

"For a general order of attachment against the property of these defendants, and that they be required to answer and disclose any money, choses in action, legal or equitable interest or other property owned by them, or in which they have any interest whatsoever, and that said attachment be sustained, and so much of said property as may be necessary be subjected to the payment of the amount due these plaintiffs as above set forth, and the cost of this action, and they finally pray for all legal and proper relief."

Some time later M. L. Flegle, wife of C. E. Flegle, was by amended petition made a party defendant, it being alleged that she was holding and claiming property, both real and personal, which in fact was purchased by and belonged to her husband, C. E. Flegle, for the purpose of defeating the collection of debts against the husband, including this execution. To the amended petition was attached a number of interrogatories which she answered under oath. She and her husband also filed a joint answer traversing the material averments of the petition, and especially those which charged fraud and collusion between the two to cover up his property and defeat the collection of the debts owing by the husband.

The plaintiffs then entered a written motion to transfer the action to the ordinary docket for a trial by jury of the issues of fact, and also to require the defendants, M. L. Flegle and E. C. Flegle, to appear in open court for oral examination concerning the ownership of the property held by M. L. Flegle. Both these motions were overruled by the court, and now form one of the principal

grounds urged by appellants for a reversal of the judgment. This is purely an equitable action, and in such case a party is not entitled as a matter of right to have an issue of fact tried by a jury, but the granting of such right is within the sound discretion of the chancellor and may be refused. If granted the verdict is only advisory, and may be disregarded by the chancellor. But where the decision of the equitable action depends on the finding of fact a party may by timely motion require an issue out of chancery. Carder v. Weisenburger, 95 Ky. 135; Comingor v. Lou. Trust Co., 128 Ky. 697; O'Conner, etc., v. Henderson Bridge Co., 95 Ky. 634; Reiger v. Eicher, 151 Ky. 129.

Where the common law issue is the chief one in the case and its determination conclusive of the rights of the parties the chancellor can not refuse a trial of such issue by a jury. This being a purely equitable action, we do not think the trial court erred in refusing an issue out of chancery.

Appellants next insist that the court erred in failing to sustain their motion to compel appellees to come into court and submit to an oral examination touching their ownership and interest in the several properties attached, under section 220, Civil Code. Under that Code provision a court may or may not require a party or garnishee to appear and give oral testimony at its discretion, but it is not obliged to do so. If there is not some very urgent reason why such an examination should be had an examination by deposition will suffice. The court may, however, in any such case where the facts have not been fully and fairly disclosed by defendants, require an oral examination in open court.

The third and chief insistence of the appellants is that the facts do not warrant or support the decree of the chancellor, and this seems to be well founded.

The defendants, C. E. and Jake Flegle, claim no property subject to execution, but defendant M. L. Flegle, wife of C. E. Flegle, claims to own a home in Clinton, an interest in a farm nearby, twenty shares of the stock of the Star Milling Co., an automobile and other property sufficient to satisfy the execution which was returned "No property found," all of which she has acquired since her husband failed in business at Arlington and the obligation sued on was contracted. She has never been in business. She inherited nothing. When the defendants

moved from Arlington, the scene of their financial disaster, to Clinton in 1912, she says she had no property whatever except a right to the surrender value of a policy of life insurance worth about $190.00. She was asked: "Did you have any property? A. Well, I had a little insurance. Q. Do you remember how much it was? A. Not exactly, but somewhere about $200.00 or $190.00 some odd." The policy of insurance is not in the record, but Mrs. Flegle testifies that it was one on her life and that her husband was the beneficiary, and if so she was not entitled to the cash surrender value thereof. The evidence on this point is so scanty and indefinite that the court is unable to determine with absolute certainty whether her claim to this $190.00 of insurance money is well founded or not. She admits that she paid no part of the premiums, and it appears in an indefinite way that the premiums were actually paid from funds belonging to the defunct firm of Flegle Bros., and if so the creditors of that firm have a right to appropriate money arising from the policy of insurance to the extent of sums so paid to the extinguishment of the firm's indebtedness, if the premiums were paid at a time when the firm was insolvent.

In attempting to account for her ownership of the attached property Mrs. Flegle also claims that about the time she and her husband moved from Arlington to Clinton her brother gave her a span of mules which she sold for $375.00, which sum, with the insurance money and other funds, she invested in the Ringo Mill.

Her brother, whom she says gave her the mules, had no other property. The evidence also clearly shows that defendant, C. E. Flegle, purchased the mules from one Davis some years before the alleged gift of them to Mrs. Flegle by her brother; that Flegle gave $300.00 for the mules and told Davis he wanted them to use at the Flegle Bros. mill in Arlington, and that one Hotchkiss would drive the mules. He paid for them by check either in the name of C. E. Flegle or his name and that of Jake Flegle. All this tends strongly to prove that the mules were in fact the property of the husband, C. E. Flegle, and not M. L. Flegle. It does not stand to reason that a brother with no other property of consequence would give his sister a pair of mules when he might have used them or converted them into cash. The circumstances are suspicious.

Mrs. Flegle also says that in purchasing the stock in the Star Milling Co., which has earned dividends and paid for all the other property which she now claims, she borrowed $200.00 from Mrs. Settle, a relative. This Mrs. Settle denies. She says she did not loan Mrs. Flegle two hundred dollars or any sum. This fact, taken with the further evidence that C. E. Flegle had, without the knowledge or consent of Mrs. Settle, deposited money in bank to her credit and later withdrawn it by signing the name of Mrs. Settle to a check without her knowledge indicates that the alleged loan from Mrs. Settle was in fact the money of C. E. Flegle, manipulated through the bank in the name of Mrs. Settle. The facts surrounding the money received from the insurance policy are rather suspicious, but giving the benefit of the doubt to Mrs. Flegle, she is entitled to that sum with interest at the lawful rate from the time it was paid by the insurance company to the present time, and this should be adjudged a lien on the attached property. But the money derived from the sale of the mules and the loan of $200.00 from Mrs. Settle are too obviously fraudulent to pass. Of the $853.00 which was paid on the $2,000.00 stock in the Star Milling Co. Mrs. Flegle furnished about $190.00 which came from insurance. The balance of the $853.00 was furnished indirectly by the defendant, C. E. Flegle. He also made the note of $600.00 in the purchase of the stock. In fact it reasonably appears that C. E. Flegle adopted and used the name of his wife, M. L. Flegle, in the conduct of his business to avoid the payment of his creditors. C. E. Flegle was the head of the whole business, but operated under the name of his wife for fraudulent reasons.

She had no income or means of earning money but she acquired all the property. He had a fair monthly salary and was an active business man, but accumulated nothing in his own name, though he managed to gather property for his wife, who had no capital to begin with. A court cannot shut its eyes to such glaring fraud no matter how skillfully managed or operated.

C. E. Flegle is the real owner of the twenty shares of stock in the Star Milling Co., as well as the automobile and the equity in the home in Clinton and other property mentioned in the petition, subject to the lien of Mrs. Flegle for the amount of the insurance money with interest and such other liens as existed at the time of the commencement of this action, and this property is subject

to plaintiffs' debt. The trial court should have so adjudged. For these reasons the judgment is reversed, with directions to enter a judgment as herein indicated.

Judgment reversed.