## Mahuron, et al. v. Mahuron, et al.

(Decided March 24, 1925.)

### Appeal from Shelby Circuit Court.

Deeds—Evidence Held Not to Show Mental Incapacity or Undue Influence in Conveyance of Property by Grantor to Two of his Grandchildren.—In action to set aside a conveyance by grantor of his property to two of his grandchildren, on ground of mental incapacity and undue influence, evidence that grantor's only son and daughter had neglected him, and that friction existed between grantor and his remaining grandchildren, together with other evidence, held to sustain finding for defendants.

PICKETT, BARRICKMAN & KALTENBACHER for appellants.

WILLIS, TODD & WILLIS and E. B. BEARD for appellees.

Opinion of the Court by Judge Clay—Affirming.

Silas Mahuron died intestate on August 6, 1922. His only heirs were a son, John M. Mahuron, a daughter, Alice Bryant, and four grandchildren, E. C. Mahuron, S. C. Mahuron, J. W. Mahuron and Stanley Mahuron. On July 13, 1922, in consideration of their agreement to support him during the remainder of his life and to pay his funeral expenses, he conveyed to his grandsons, E. C. Mahuron and S. C. Mahuron, a farm of 227 acres situated in Shelby county. This action was brought by John M. Mahuron, Alice Bryant, Stanley Mahuron and J. W. Mahuron to set aside the deed on the ground of mental incapacity and undue influence. The chancellor dismissed the petition and plaintiffs have appealed.

Some years ago Silas Mahuron made a will by which he devised 50 acres of the land in controversy to John M. Mahuron for life, 50 acres to Alice Bryant for life, and the remainder of his farm to George Darnell Mahuron, who has since died, and who was the father of E. C. Mahuron, S. C. Mahuron, Stanley Mahuron and J. W. Mahuron, but the will was afterwards destroyed. It appears that Alice Bryant married against her father's wishes and that for many years prior to his death they saw but little, if anything, of each other. There was also an estrangement between him and his son, John M. Mahuron. There was further proof tending to show that during the latter years of his life he spent awhile with his grandsons, Stanley Mahuron and J. W. Mahuron, but that the action of their wives in criticising his uncleanly habits about the house caused friction that finally led to his departure. He then went to the home of E. C. Mahuron, where he remained until his death. During the spring of 1922 he had an attack of the flu. On June 29 he was sick from hemorrhages and congestion of the lungs. Dr. Morris was called on that day and prescribed for him. The next day the doctor was called and asked to write a deed conveying the farm to E. C. and S. C. Mahuron. After a short delay the doctor declined to write the deed on the ground that he was the physician for all the family and didn't care to get mixed up in any controversy. On the day the deed was written the grantees brought their grandfather to town in a machine, and the deed was prepared by Judge Elliott Beard. On entering his office one of the grantees said, "Here is Mr. Beard and you can tell him what you want." Thereupon the grantor told

Judge Beard that he wanted a good lawyer to write a deed and that he had been recommended to him. He also stated that he wanted a deed written that could not be set aside. At the time he had the deed to his property in his pocket. Judge Beard inquired how many acres there were and the grantor told him the number of acres was either 227 or 230. Judge Beard then asked what the consideration was, and the grantor replied that the boys were going to take care of him, provide him a home and pay his funeral expenses when he died. Judge Beard then said, "Do you understand that if you make this deed to those two boys that your children will not get any of your property at your death?" and the grantor said that he did. Judge Beard then asked, "Why do you want to cut them out?" The grantor said, "They haven't paid me any mind for a good many years, and I want this property to go this way at my death." At the time the conveyance was made, the grantor was 97 years of age. His death took place about three weeks later. It further appears that the grantor's son and daughter, who had been an invalid for a number of years, had no property and that the estates of his grandsons, Stanley Mahuron and J. W. Mahuron, were quite small. Appellants and others also testified that grantor was of a weak mind and gave certain circumstances as the basis of their opinion. On the other hand, the larger number of witnesses, who were more or less closely associated with the grantor during the closing days of his life, gave it as their opinion that he was a man of strong mind. Among them was Mrs. George Darnell Mahuron, the mother of Stanley, J. W., E. C. and S. C. Mahuron. She also testified that grantor had stated in her presence that he wanted her two older children to have the property, that he had already put off the matter too long, and wanted it wound up if he had to get the best lawyer in Louisville. In her opinion the grantor was of good mind on the day the deed was executed, and his mind was clear up to the time he died.

The argument in behalf of appellants is, that the conveyance was unnatural in view of their poverty and consequent claims on the grantor's bounty; that owing to the advanced age of the grantor and his feebleness at the time, the agreement to support him amounted to nothing, and the deed was without consideration; that in view of the relationship of the parties, the burden was on

appellees to show the fairness of the transaction, and that not only was this burden not sustained, but all the circumstances tended strongly to show that the grantor was so old and feeble that he was in no condition to withstand the importunities of appellees. The only way, of course, that appellees could meet the burden was by showing that grantor's mind was such that he knew and understood the nature and legal effect of the transaction, and that the deed was his voluntary act. One cannot read the record without being persuaded that the grantor had been wholly neglected both by his son and his daughter, Mrs. Bryant, and that this neglect on the part of Mrs. Bryant existed long before she became an invalid. It is also clear from the testimony of Mrs. George Darnell Mahuron that he found fault with the way he had been treated in the homes of Stanley and J. W. Mahuron, and that his fondness for Edward and Sidney was due to the thoughtfulness and kindness with which they treated him. There are some fathers and grandfathers who overlook any neglect on the part of their children and grandchildren when they come to distribute their property, but there are others who do not recognize any claims on their bounty by those who have neglected them, and where, as here, a clear case of neglect is shown, it of itself may account for the preference shown to others whose kindness, courtesy and affection have never wavered. Not only so, but the circumstances relied on to show mental incapacity on the part of the grantor were wholly lacking in probative value, and the decided weight of the evidence is to the effect that he fully understood and appreciated the nature and effect of the transaction. Furthermore, he still had an expectancy of several months, and took the precaution to provide that he should be taken care of during the remainder of his life. At most, the circumstances relied on to show that the grantor's free agency was destroyed and that he was con-strained to do against his will what he otherwise would refuse to do, are sufficient only to raise a doubt which will be resolved in favor of the chancellor's decision.

Judgment affirmed.

Judge Thomas dissenting.

Whole court sitting.