## Parker, et al. v. Archibald, et al.

(Decided January 26, 1926.)

### Appeal from Webster Circuit Court.

1. Deeds—Grantee in Confidential Relationship with Grantor Meets Burden of Showing Fairness by Showing Grantor's Mental Capacity and that Deed was Voluntary Act.—Where confidential relationship exists, burden imposed on grantee of showing fairness of transaction can be met by showing that grantor knew and understood nature and legal effect of transaction, and that deed was her voluntary act.
2. Deeds—Evidence Held Not to Show that Deed Procured by Fraud or Undue Influence.—Evidence held insufficient to show that deed was procured by fraud or undue influence, especially where grantor's purpose was to make provision for grantee by deed instead of by will.
3. Wills—Instrument Conveying Entire Title and Reserving Life Estate to Grantor Deed and Not Will.—An instrument whereby grantor conveyed entire title and reserved a life estate is a deed and not a will.

COX & GRAYOT and C. J. WADDILL for appellants.

RAYBURN & WITHERS and J. A. JONSON for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

On August 24, 1915, Mrs. Sudie C. Mounts, a widow, in consideration of $500.00 cash and other valuable consideration, conveyed to her nephew, H. B. Archibald, a house and lot in Slaughters and 295½ acres of land in Hopkins county. In addition to the usual granting and

habendum clauses and covenant of warranty, the deed contained the following provision:

> "It is expressly agreed and understood, however, that said party of the first part retains absolute control, possession and supervision of the above described property so long as she lives, and she is to pay all taxes on same during her life."

On November 20, 1923, Mrs. Mounts died intestate, leaving as her only heirs certain collateral kindred.

Shortly after the death of Mrs. Mounts, William R. Parker and other heirs brought this suit against Miranda Parker Archibald and H. B. Archibald to partition the two tracts theretofore conveyed to H. B. Archibald, and another tract in which Mrs. Mounts had a life estate. Archibald filed an answer and counterclaim denying the title of plaintiffs to the tracts covered by his deed, and pleaded title in himself by virtue of the deed. Plaintiffs first denied the allegations of the answer and counterclaim, but subsequently filed an amended pleading alleging that the deed was obtained by fraud and undue influence. On final hearing the petition was dismissed, and Archibald's title to the two tracts was quieted. Plaintiffs appeal.

Several of the plaintiffs testified that they did not know of the existence of the deed to Archibald until after Mrs. Mounts' death; that while Archibald sometimes attended to Mrs. Mounts' business, and her relations with him were friendly, they were not more friendly than they were with her other relatives. There was further evidence that the lot was worth about $2,500.00 and the land about $12,000.00. In addition to this plaintiffs took the deposition of Archibald as if on cross-examination, and, briefly stated, his evidence is as follows: When the deed was executed Mrs. Mounts lived in Slaughters and he lived in Hopkins county, twelve or fourteen miles away. Prior to that time he had sold her the lot in Slaughters and had made two deeds. In the first deed he reserved to himself the remainder after her death. In the second deed he conveyed the lot absolutely. The consideration was $1.00 and the agreement that upon the payment of $500.00 she would deed the lot to him. After that she built a house upon the lot. At that time he and Mrs. Mounts were on intimate terms of friendship, and these relations continued until her death. After her husband died he helped her to attend to some of her business, but

not all of it. The consideration that moved her to convey the house and lot was because she thought enough of him to help him out that much. She first made a will in his favor, but reading in the paper that some one's will had been broken, she asked if there was not a safer way to fix it than by will. After that he consulted his attorneys and they suggested that the arrangement be carried out by deed. He prepared the deed on the typewriter, showed it to his attorney, took it to Mrs. Mounts and they went to J. W. Gentry & Sons' blacksmith shop at Slaughters, where she signed, acknowledged and delivered it to him. After the deed was delivered he showed it to Mr. Johnson and then put in the Hopkins County Bank for safekeeping. It was not lodged for record because Mrs. Mounts so requested, saying that she did not want other people to know her business, and didn't want some folks to find it out. After the deed was made the will was destroyed. While he assisted Mrs. Mounts in attending to her business, hers was the controlling voice. He never suggested the making of the deed, nor did he ask for it, but hinted that he would like to have the Green river land. Further than that he did not seek to persuade or influence her.

In addition to the foregoing evidence, several witnesses deposed that Mrs. Mounts was a woman of fine mind, strong character and good education, and fully capable of looking after her affairs, and not a single witness to the contrary was introduced. Not only so, but defendant's evidence as to the circumstances under which the deed was signed and acknowledged was fully corroborated by the notary who took the acknowledgment, and by others who were present.

The argument for reversal may be summarized as follows: The relations between defendant and Mrs. Mounts were of a confidential character, and the burden was on him to show the fairness of the transaction. Not only did he fail to do so, but the secrecy of the transaction, the inadequacy of the consideration, the premature mobilization of his witnesses, and the unfair advantage which he obtained, are sufficient to show fraud and undue influence.

In view of the fact that Mr. Archibald only now and then assisted Mrs. Mounts in attending to her business it may be doubted if his relations with her were of such a confidential character as to impose on him the burden of showing the fairness of the transaction; but, even if we

assume that the burden was on him, the only way that he could meet the burden was by showing that the grantor's mind was such that she knew and understood the nature and legal effect of the transaction, and that the deed was her voluntary act. Mahuron v. Mahuron, 208 Ky. 825, 271 S. W. 1093. In as much as persons who are old, infirm and of weak mind are more or less susceptible to improper influences, there is usually, in cases of this kind, some evidence of mental incapacity; but, as before stated, not a witness in this case testified to a single fact tending to show that Mrs. Mounts was of weak mind or was easily influenced by others. On the contrary, she was shown to have been a woman of fine mind, good education and strong character. Not only do women of that kind usually do as they please, but there is positive evidence that in the execution of the deed in question Mrs. Mounts was simply carrying out her own plan.

If this were a case of mere sale, the inadequacy or incorrectness of the consideration stated in the deed might play an important part. But when the transaction is considered in the light of all the circumstances, it is apparent that Mrs. Mounts' purpose was to make provision for her nephew by deed instead of by will, and in view of this fact we do not consider the inadequacy or incorrectness of the consideration as entitled to much weight. For the same reason, and the additional reason that the deed was not recorded at the request of Mrs. Mounts, the failure to record the deed until after her death can not be regarded as controlling. Nor can any effect be given to the fact that Mr. Archibald acted promptly in summoning his witnesses and taking proof. He had been sued, and, in taking immediate steps to prepare his defense, he simply did what was natural and proper and what any other litigant would have done in the circumstances, and from this conduct no presumption of prior wrongdoing can possibly arise. On the whole, we agree with the chancellor that the evidence was not sufficient to show that the deed was procured either by fraud or undue influence.

But the further point is made that the deed was simply a will and not properly executed as such. This is not a case where the property remained subject to disposition by the grantor at any time before her death, Ison v. Halcomb, 136 Ky. 523, 124 S. W. 813, but a case where the grantor conveyed the entire title and reserved a life estate. In other words, a present fixed interest passed

and vested in the grantee on the delivery of the deed, and the grantor's title to and control over this interest then ceased. That being true, the instrument took effect as a deed and not as a will. Hunt v. Hunt, 119 Ky. 39, 82 S. W. 998; Rice v. Fields, 192 Ky. 161, 232 S. W. 385.

Judgment affirmed.