## James, et al. v. Cullins.

(Decided April 27, 1926.)

### Appeal from Henry Circuit Court.

1. Deeds.—In suit to set aside deed, evidence held insufficient to sustain jury's finding that grantor was of unsound mind.

2. Trial—Granting Jury Trial in Suit to Cancel Deed is Within Sound Discretion of Chancellor, who May Disregard Verdict.—Cancellation of deed is equitable remedy, governed exclusively by equitable principles, and parties are not entitled as matter of right to trial of fact issues by jury; granting of such right being within sound discretion of chancellor, who may disregard verdict, which is only advisory.

3. Appeal and Error—Chancellor's Judgment, in Disregard of Jury's Findings on Equitable Issue, Will Not be Disturbed, Where Evidence is Conflicting or Mind is Left in Doubt.—Where jury's findings on equitable issue, submitted in aid of chancellor, are dis-

regarded by him, his judgment will be considered on appeal without reference to jury's verdict, and will not be disturbed, where proof is conflicting or mind is left in doubt.

4. Deeds—Burden was Not on Defendants, in Suit to Set Aside Deed to Them from Strong-Willed and Active Husband and Father, with Whom They Lived, to Show Absence of Undue Influence.—Where grantor was strong in will and body, managed his own business, and was head of family in fact as well as law, burden was not on his wife and daughter to disprove undue influence, in another daughter's suit to set aside deed to them, though they lived with him.

5. Deeds.—Evidence held not to warrant setting aside deed for undue influence, though sufficient for jury under scintilla rule.

W. B. MOODY and TURNER & TURNER for appellants.

J. R. FEARS and R. F. PEAK for appellee..

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

Thomas James owned two farms in Henry county. On June 6, 1918, he conveyed these tracts to his wife Martha James and his daughter Stella Bondurant, reserving the right to use, occupy and enjoy the home place during his lifetime. He died in April, 1921, and on August 30, 1922, his daughter Alice Henderson brought this action to set aside the deed on the ground that the grantor lacked capacity to make it and was unduly influenced by the grantees. The allegations of the petition were denied. The case was submitted to a jury a majority of whom made a special finding that the grantor was not of sound mind when he made the deed and that he was unduly influenced to make it. The court entered judgment pursuant to the finding of the jury and refused to enter judgment in favor of the defendants on the evidence. The defendants appeal.

Thomas James, who then lived in Henry county, about fifty years ago went with his wife to Texas. While there he and that wife fell out and he returned to Kentucky, bringing with him his infant daughter Alice, then about four year old. They lived with his father and mother for some years. In the meantime he was divorced from the wife in Texas and after this he married his second wife, Martha, with whom he lived until his death. After his second marriage the child Alice lived with him and his wife on a farm he owned. In 1892 she ran off with William Henderson and was married to him over

her father's objection. About a month after this one of the Hendersons was killed and James was indicted for killing him. He was found not guilty of killing Henderson but was found guilty of shooting at him. James continued on bad terms with William Henderson for many years. In the year 1910, when Henderson and his wife had six children and he was living as a cropper on a farm in the neighborhood, James had the family to move to one of his farms to help them along. They lived there thirty-one months. In the year 1913 Henderson and his wife fell out and he left. In March, 1913, at her father's request, she left the farm. He had by two third persons requested her to have her husband return and he would let them continue on the farm, but the answer she returned by the messenger was that if she had to let Bill come back she didn't want the farm. The old man's reason for sending the messengers to see her was he had been there just before and a man named Maupin was there with a shotgun and he was afraid Maupin would shoot him if he went back. Maupin was later sent to the penitentiary. On November 18, 1917, Thomas James came up to Frankfort and there employed Leslie W. Morris, an attorney, to write the deed in question for him. He explained to Mr. Morris what he wanted and Mr. Morris wrote the deed as he directed, and at his direction mailed it to Mrs. James. Mr. Morris testifies that he seemed absolutely all right, and was perfectly normal in mind. There was no one else present. But he did not have the number on the pages of the deed book where the deeds to James were recorded for the land and he told James he must have these filled in before the deed was recorded. Nothing more was done until June 6, 1918, when James took the deed which Morris had written to W. B. Moody, an attorney at New Castle, the county seat of Henry county, and had Mr. Moody fill out the blanks which Morris had left in the deed above referred to. He then told Moody that he wanted to reserve for himself the control of the home place as long as he lived and Moody then rewrote the deed, inserting this reservation in it, but leaving it in all other respects as written by Morris. Moody testified that he knew James well and his mind was perfectly normal; that he was a man of strong character and strong will, and that no one was present but him and James. The deed was then recorded. James was seventy-three years old when he died and was about seventy years old when he had the

deed written and recorded. He had been married to his
second wife about forty years before. His daughter,
Stella, by the second marriage, had married some years
before William Bondurant, and she and her husband lived
with her father and mother as one family. Alice Hen-
derson after leaving the farm lived with her family for
a while in Indiana and then returned to Henry county
near Eminence and there, after this suit was filed, she
was married to ———— Cullins after she had been di-
vorced from William Henderson.

Many years before his death, Thomas James was in
a railroad accident in which he received an injury to his
shoulder. This injury gave him pain and interfered with
the use of that arm as long as he lived. It did not other-
wise affect him, but besides he suffered with locomotor
ataxia or rheumatism or some trouble in his legs. About
ten years before his death he had a stroke of paralysis,
but he was only confined to his house for a few days, and
after this he attended to his business as he had always
done. He had a number of tenants and made the con-
tracts with them and saw after the carrying out of the
contracts and the settlements with his tenants; he kept
his bank account and transacted all his business as any
other man. At the time of his death he had $2,400.00 in
bank. He was a large, heavy man. In the latter years
of his life he had some difficulty in getting in and out of
a buggy and for this reason usually had someone to go
with him. He was in some respects a peculiar man. He
was obsessed with the idea that the Hendersons or some
of his enemies would kill him and was high tempered
when anything excited him. But there is an utter want
of evidence to show that he was not a sane and normal
man when the deed was written by L. W. Morris, and
signed by him, or rewritten by W. B. Moody and signed
and acknowledged by him. The verdict of the jury find-
ing him then of unsound mind is palpably against the
evidence.

The evidence as to undue influence consists of certain
declarations made by James to persons who knew him,
to the effect, in substance, that he couldn't do anything
for Mrs. Henderson or else he would have to leave home.
There was also some proof of declarations by him that
he would make a will devising to Mrs. Henderson the
farm on which she lived. But these declarations were
made while she lived on the farm and before the Maupin

incident. In addition there was proof that he said after the deed was made that it was written just he wanted it, and also evidence that the deed was the result of a settled purpose in his mind, formed several years before the deed was written. After the deed was written and some months before his death he had another stroke of paralysis from which he never recovered, and from this time on he was confined to his house, and toward the last, like many old persons in similar circumstances, was nervous and tearful, but this was more than two years after the execution of the deed.

Cancellation is an equitable remedy and is governed exclusively by equitable principles, as is well settled in this court.

> "The cause of action was purely equitable, and while it depended on an issue of fact as to the existence of fraud in procuring the deed, there was no legal issue that was triable at law presented. Upon this issue of fact presented by the pleadings, the chancellor might have called to his aid a jury, but he was not compelled to do so." Reese's Admr. v. Youtsey, &c., 113 Ky. 840.

> "The action being one of purely equitable cognizance, appellants were not as a matter of right entitled to a trial of the issues of fact by a jury. It was in the discretion of the court to allow it as an issue out of chancery, but it would not have been bound by the verdict of the jury." Quinn v. Hendren, 187 Ky. 287.

> "This is purely an equitable action, and in such case a party is not entitled as a matter of right to have an issue of fact tried by a jury, but the granting of such right is within the sound discretion of the chancellor and may be refused. If granted the verdict is only advisory, and may be disregarded by the chancellor." Carter v. Flegle, 192 Ky. 195.

The rule as to the effect to be given the chancellor's judgment on appeal is also well settled.

> "In cases of this character, where an issue of equitable cognizance is submitted to a jury in aid of the chancellor, and the findings of the jury are disregarded by him, the judgment of the chancellor will be considered by this court without reference to the verdict of the jury, and the same effect will be given

to it as if there had been no finding of facts. As frequently held, this court will consider the evidence and determine the case according to the truth of the matter as it shall appear to the court from the whole record, and where the proof is conflicting on the whole case or the mind is left in doubt as to the truth, the chancellor's judgment will not be disturbed." Wilson v. Nichols & Shepherd Co., 139 Ky. 509.

"The rule governing the right of this court to review such adjudged issues and prescribing the weight to be given to the court's finding has been often repeated, and is fully understood. In substance, it is, that if the testimony creates only a doubt in our minds, such doubt will be resolved in favor of the chancellor's findings, and unless his judgment is against the preponderance of the testimony, it will not be disturbed." Wood v. Moss, 176 Ky. 425.

In McElwain v. Russell, 12 S. W. 777, which was an action like this to set aside a deed on the ground of incapacity and undue influence, the jury returned a verdict in favor of the defendants; the circuit court entered judgment pursuant to the verdict, but on appeal the judgment was reversed with directions to cancel the deed. In Sellers v. Sellers, 162 Ky. 9, the jury found against the deed; the circuit court entered judgment pursuant to the verdict, but on appeal this court reversed the judgment with directions to enter a decree upholding the deed.

This is not a case in which the burden is upon the grantees, to show that there was no undue influence. The court has applied that rule where confidential relations existed, confidence was abused and advantage taken of weakness. Smith v. Snowden, 96 Ky. 37. It is also applied as the rule between near relatives where the grantor was old and infirm and under the care and dependent upon the grantee to whom the deed was made. Hoeb v. Maschinot, 140 Ky. 330; Sword v. Fields, 192 Ky. 631; Gross v. Courtley, 161 Ky. 158. But it has refused to apply the rule in a case such as this. Shacklette v. Goodall, 151 Ky. 23. In this case James was a large, strong man, strong in will no less in body. While his wife and daughter and her husband lived with him as one family, he was in law and in fact the head of the family. He managed his farms, made his contracts with his tenants

and settled with them. He kept his money in bank and in every sense of the word managed his own business. While there was sufficient evidence of undue influence to take the case to the jury under the scintilla rule, to set aside this deed on the ground of undue influence would be for the court to shut its eyes to the truth and ignore the facts established by uncontradicted evidence. The deed, as shown by the undisputed proof, was the result of a settled purpose formed in the grantor's mind long before he came to Frankfort to have it drawn. This purpose continued in his mind not only until he had Mr. Moody re-write the deed but until his death, for he repeatedly after it was recorded expressed his satisfaction with it and his approval of it. Alice Henderson, so far as appears, had not spoken to her father or been to see him or paid him the slightest attention for years before this deed was written. She appears to have taken no interest in him in any way after she left the farm in 1913. He plainly intended when he put Alice on the farm to make a will devising it to her, but this purpose was changed by reason of her conduct after her husband left, and she had Maupin there on the farm with her. She knew how her father felt about the matter, but, so far as appears, she took no steps to set herself right with him. The deed was the result of a settled purpose formed in his mind, growing out of the way his daughter had acted. He had the power to give what he had to those who loved him, so far as he wished to do so. The court is not at liberty to set up its judgment against his judgment as to what he should do with his own. The deed was an absolute conveyance of one of the tracts to the grantees, and was a conveyance of the home tract to them subject only to his right to use and control it during his lifetime. The deed took effect upon its delivery. It was not a will taking effect at his death, but was a disposition of his property by him taking effect then, made freely and voluntarily and with full understanding of its nature and consequences. Williams v. Reese, 177 Ky. 684; Parker v. Archibald, 212 Ky. 567.

Judgment reversed and cause remanded for a judgment dismissing the petition.