## McWhorter v. Ballou et al.

June 24, 1949.

James A. Hicks, L. C. Lawrence and H. C. Kennedy for appellant.

J. A. Flowers, Flowers & Pritchard and Duncan & Duncan for appellees.

OPINION OF THE COURT BY JUDGE KNIGHT—Affirming.

### Statement of the Case.

This suit was brought by appellees, P. V. Ballou, A. J. Watham and W. L. Straley against appellant, Otha McWhorter, for damages in the sum of $200, the value of twenty-five trees which it is alleged appellant cut without right and converted to his own use. The petition and amended petitions allege that appellee P. V. Ballou is the owner of the two tracts of land described in the amended petitions. The first tract, known as the Conner survey, of 259 acres, less 67 acres off the north part thereof heretofore conveyed to J. B. Conner, is fully described in the first amended petition, and the second tract, known as the Brown tract, is fully described in the

second amended petition, the exact acreage in this tract not being shown. Both tracts of land are in Clinton County near the Russell County line. The petition further alleges that timber on the above tracts of land was sold and conveyed to appellees, A. J. Watham and W. L. Straley, and that appellant is threatening to continue to cut the trees and timber off said land which timber and land belong to appellees. In addition to the damages prayed for, appellees pray that appellant be enjoined from cutting or removing any more timber from the tracts of land described in the petition and amended petitions. A restraining order was issued against appellant.

In his answer and counterclaim and amended answer and counterclaim appellant denies the allegations of the petition and amended petitions, sets up that he is the owner of 67 acres of land which he describes in his amended answer and counterclaim and which he says is the 67 acres referred to and excepted from the 259 acre boundary described in appellees' first amended petition. He further alleges that none of the timber which he cut was on the land of appellee Ballou but instead all was cut on the 67 acres belonging to appellant; that appellees, without right, have entered upon and cut from the 67 acre tract belonging to appellant 50 trees valued at $500. He prays damages in his original answer and counterclaim for $100 on account of the unlawful restraining order and for $500 additional damages in his amended answer and counterclaim for the unlawful cutting of the trees on the 67 acres. He further alleges that no part of the timber which he was alleged to have cut was cut from the Brown tract described in appellees' second amended petition.

Upon the issues being made up by replies filed, the court, on motion of appellees, transferred the case from the equity side of the docket, in which it had first been filed, to the ordinary docket "to try an issue out of chancery." The case was heard before a jury and at the conclusion of the trial the jury brought in a verdict signed by its foreman as hereinafter set out in the judgment below. The court thereupon entered a judgment the material parts of which, for the purposes of this appeal, are as follows:

"This action having been transferred to the ordinary docket for a trial before a jury on the issues of fact presented by the pleadings * * * and the jury having returned into open court the following verdict, towit:

'We the jury find for the plaintiffs the sum of $5.00 Signed L. S. York, foreman.'

"Thereupon this action was submitted to the court for hearing and judgment upon the pleadings, exhibits, the testimony heard upon the trial of this action and the verdict of the jury and the court being advised adjudges as follows: that plaintiff P. V. Ballou is the owner and entitled to the immediate possession of the tracts of land and plaintiffs A. J. Watham and W. L. Straley are owners of the merchantable timber standing, lying or growing upon said lands, situated in Clinton County Ky. on the waters of Indian Creek and described as follows:

(1)   (Here follows a new description of the Conner tract less the 67 acre exclusion.)   (2) (the Brown tract as referred to in the second amended petition.)

"It is further adjudged that plaintiffs A. J. Watham and W. L. Straley recover of defendant Otha McWhorter the sum of $5.00 for timber cut and removed from said land and the defendant is hereby permanently enjoined from cutting or removing timber on the land described herein."

The judgment then adjudges costs to plaintiffs, dismisses defendant's counterclaim and grants defendant an appeal to the Court of Appeals. It is from this judgment that this appeal is prosecuted.

## Points on Appeal.

We have set out the judgment in this case substantially in full because one of the contentions of appellant is that the judgment was not authorized by the verdict of the jury, which verd:ct did not determine the owner-ship of the land involved in dispute but simply found a nominal sum in damages for trees cut.

This was a suit to try title and for an injunction and incidental damages and was purely an equitable action. The case was transferred to the ordinary docket to try an issue of fact out of chancery. The verdict of

the jury was only advisory and could have been disregarded by the chancellor. Carter v. Flegle, 192 Ky. 193, 232 S. W. 621; James v. Cullins, 214 Ky. 179, 282 S. W. 1006. When that issue of fact was decided we assume that the case then came before the chancellor and that it was as such that he entered the judgment because that judgment says, ''Thereupon this action was submitted to the Court for hearing and judgment upon the pleadings, exhibits, the testimony heard upon the trial of this action and the verdict of the jury and the court being advised adjudges as follows:'' It therefore appears that the chancellor accepted the verdict of the jury on the question of damages for cutting of the trees but as chancellor and on the whole record adjudged appellees owners of the land involved and the timber thereon. The judgment of the chancellor was therefore authorized even though the verdict of the jury, which was only advisory, covered only one phase of it.

Another contention of appellant is that the court erred in refusing to allow the jury to consider certain important testimony offered by him. This evidence consisted of a part of the record in another suit between appellee and other parties involving that part of the Conner tract involved in this litigation then as now owned by appellee Ballou. The point involved in that suit was location of the Kelsey corner and the location of the line between Ballou and Denny, and that litigation reached this court and is reported as Ballew v. Denny, 296 Ky. 368, 177 S. W. 2d 152, 150 A. L. R. 770. The division line in controversy there was much further south than the lines in controversy here and had no connection therewith. But part of the record in that case was sought to be introduced for the purpose of showing the location of the Jackman corner which is the beginning corner of the Conner tract now owned by appellee Ballou and the location of which corner is one of the points in controversy here. The parts of the record which appellant desired to introduce were introduced over appellees' objection by Ronnell Gibson, appellant's surveyor and witness in this case, who had also made a survey and report to the court in the Ballou-Denny case but at the conclusion of all the evidence the court admonished the jury not to consider as evidence in this case any evidence given by Ronnell Gibson about locat-

ing any line under any order of the court in the other case. While we think this admonishment should not have been given and that the evidence was not incompetent, we do not think its exclusion was prejudicial in this case. That evidence was largely cumulative. Ronnell Gibson and other surveyors gave full and complete testimony as to the location of the controversial Jackman corner and the entire boundary lines of appellant's tract, as he claimed it to be, and of the boundary lines of the Ballou tract, as the witness believed it to be. We do not think the admonition to the jury not to consider as evidence the court records in another case as additional evidence was so prejudicial to appellant's substantial rights as to justify reversal on that ground.

We come now to the principal ground relied on for reversal by appellant and that is that the verdict and judgment are not supported by the evidence. As in all boundary line disputes that come before us the evidence is highly conflicting. Not only do the witnesses relied on by each contestant to establish focal points and boundary lines disagree, but surveyors employed by each party disagree and reach diametrically opposite conclusions. The pivotal question in this case is the location of Jackman corner, the beginning point of the Conner survey of 259 acres now owned, with the exception of 67 acres, by appellee Ballou. This Jackman corner, referred to in the John Jackman patent adjoining the Conner survey, has been referred to as a monument of title in deeds coming through that patent for more than one hundred years and has been referred to in all deeds involving the Conner tract since it was patented to Conner by the Commonwealth and it would appear that there could be no doubt as to its location. Yet witnesses, including surveyors, for appellant and appellees establish the location of this corner 54 poles apart and thereby hangs the tale. If it is where appellant's witnesses and surveyors locate it then the 67 acre tract claimed by appellant lies much further south of the Clinton-Russell County border lines than appellees contend it does and the ground upon which the trees in question were cut could be part of appellant's land. If the Jackman corner is where appellees' witnesses, including surveyors, locate it then the 67 acre tract claimed by appellant is much further north toward the Clinton-Russell County

line and the ground on which the trees were cut was not part of appellant's land.

We have read carefully all the conflicting evidence concerning the location of Jackman's corner, even including the portions of the Ballou-Denny suit put into the record but later excluded from the jury by the court; we have considered the evidence of the surveyors who testified for each side, and the maps and surveys filed by them; we have considered the testimony of appellant and appellee Ballou; of Joe Means, predecessor in title of appellant of part of the 67 acre tract he claims, but who testified for appellee Ballou; of Tommy Conner, son of C. M. Conner and long familiar with the 259 acre tract and himself former owner of the adjacent 270 acre C. M. Conner tract which corners at the Jackman corner; and we have considered the physical facts. It would serve no purpose to detail this evidence in this opinion because it is meaningless unless read in connection with the maps and surveys which we have before us but which are not available to others reading this opinion. From all that evidence, conflicting as it is, we are convinced that the Jackman corner is located at the point shown by the evidence, including maps and surveys, produced by appellee Ballou and that it is not located 54 poles southwest of that point at the place at which appellant's evidence locates it.

In appellant's brief he says that this entire case turns on the location of the 67 acres excluded in the deed to appellee Ballou in the C. M. Conner survey, as made in the deed from Elizabeth McWhorter to W. T. Dicken, plainly designating it to be in the northern end of that tract of land. We will next consider that angle of the case.

The 259 acre patent from the Commonwealth to C. M. Conner, issued in 1856, contained a well defined description by metes and bounds with the beginning point as Jackman's corner and that same description was used in all mesne conveyances until and including the deed to appellee Ballou dated September 4, 1903. The seeds for this future litigation were planted when in a division of the lands of C. M. Conner there was awarded to his daughter, Elizabeth McWhorter, this 259 acre tract, less 67 acres, which 67 acres were awarded out of this tract

to a brother, J. B. Conner. But in no place in this record is there any deed showing a description of this 67 acres which were cut out of the 259 acre tract. But in every deed thereafter made for that part of the 259 acre tract that was awarded to Elizabeth McWhorter, which included four mesne conveyances, from her down until it was vested in Ballou, the same well defined description of the original 259 acre tract was used but in each case the 67 acres were merely excluded by reference thereto as the 67 acre tract heretofore conveyed to J. B. Conner. It is significant in the location of this 67 acre exclusion that in the first deed after it was acquired by Elizabeth McWhorter, in her deed to W. T. Dicken in January 1885, she referred to this exclusion, after describing the 259 acres, as follows: "but it is expressly agreed and understood that there is 67 acres of this tract not conveyed in this deed but has been conveyed and is now owned by J. B. Conner and which is the *North* end of the above named tract." (Emphasis ours) The effect of this statement can only be appreciated when one views the map showing this 259 acre Conner survey which is roughly a pan shape with the handle extending from the Jackman corner and Poplar corner opposite the Jackman corner north to the Russell-Clinton line. If this 67 acres is the north end of the original 259 acre C. M. Conner tract, as his daughter says it was when she made the first deed after its exclusion when the facts were known to all, then the 67 acres must lie in the panhandle and could not possibly be further south, below the panhandle, where the trees were cut and where the land in controversy lies.

The deeds relied on by appellant and filed as exhibits give no assistance in determining the location of the 67 acres he claims. He had the opportunity to trace his title back to the common source in this case to the C. M. Conner patent out of which the 67 acres were supposed to have come. If appellant had shown the deed or report of the commissioners, who divided the land, awarding to J. B. Conner the 67 acres of land excluded from the 259 acre tract and then traced that down by mesne conveyances to himself, as appellee Ballou did his tract, a stronger case might have been made by him. Instead he relied on three deeds to him which he says go to make up this 67 acres but which cannot be identified

by their descriptions as any part thereof or of the original 259 acre tract. Exemplary of these deeds is the first one from Joe Means and wife to Otha McWhorter dated August 29, 1933, in which the description reads, ''Bounded on the north by the lands of Bryant Long, on the east by the lands of Aaron Burchett, etc., on the south by the lands of Tommy Conner and on the west by the lands of George McWhorter and Millie A. Davis, excluding therefrom 10 acres on the east side sold to Aaron Burchett.'' So far as this tract can be identified from its meager description as being bounded by adjacent tracts, it appears to come out of the John Jackman patent which lies to the west of the C. M. Conner patent because its northern boundary, Bryant Long, lies north of the Jackman tract and the southern boundary, Tommy Conner, lies south of the Jackman patent and both lie west of the C. M. Conner patent. Had this tract conveyed to McWhorter in the above deed been part of the C. M. Conner patent the southern boundary would have been P. V. Ballou who owned all the C. M. Conner patent except the 67 acre exclusion of which appellant claims the above tract is a part. Subsequently by deed dated November 30, 1935, appellant acquired title to 10½ acres from Brumley and wife which he testified are the 10 acres excluded from the tract above described. That was conveyed by a metes and bounds description but there is no call in the description that indicates it comes out of the C. M. Conner patent. The two tracts together make up a tract of about 35 acres. The other 32 acres of the 67 acre tract, which appellant claims, were conveyed to him by Mattie Stearns and others by deed dated June 21, 1947, which was after this suit was filed. This deed has a metes and bounds description and is shown to contain 50 acres. The deed says 18 acres of this 50 acre tract come out of a 100 acre survey not further identified. The other 32 acres could have come out of the 67 acres excluded from the P. V. Ballou conveyance but there are no calls by which it can be identified as being any part of the C. M. Conner 259 acre patent. From all these tracts appellant's surveyors have made up a survey not based on any of these deeds nor any calls therein but, after locating the Jackman corner 54 poles south of where the other side locates it, they have made up a description fitting the 67 acre boundary by abutting

boundaries of the owners around it, the patent lines, etc. It is from this survey that the only description of the 67 acre tract shown in the record is made up, that is in the amended answer and counterclaim filed by the appellant.

Appellee Ballou lays no claim to ownership of the 67 acre exclusion mentioned in his deed and in all the deeds in his chain of title back to the Elizabeth Mc-Whorter deed of 1885. He does not deny that appellant owns the three tracts to which he acquired title by the deeds referred to above but he contends, and his proof all goes to show, that they are either not part of the 67 acre exclusion or if they are part of that exclusion, which appellee claims no part of, they are no part of the *remainder* of the 259 acre Conner tract which appellee does claim title to. We cannot agree with the statement contained in appellant's brief that the judgment entered by the court below adjudged appellee Ballou the owner of the entire 259 acres. If appellant will examine the second call in that judgment which reads, "thence south 12 east 82 poles to a poplar and rock," he will see that it cuts off at least 67 acres between the line made by the above call and the Russell-Clinton county line, all in the panhandle or northern section of the 259 acre tract, and all lying in the 67 acre exclusion as established by appellee's proof. If the judgment entered included all the 259 acre Conner tract, as appellant says it does, then the first call in that judgment would necessarily have been "thence N. 20 E. 115 poles to a *stake in the Russell county line*," as the Conner patent of 1856 and every deed since has shown that first call to be. Instead, the first call in the judgment is, "thence N. 20 E. 80 poles to a stake," which carries it to the cut off line in the second call referred to above.

It will thus be seen that no part of the 67 acres claimed by appellant is included in the judgment unless some part of the 67 acres lies south of the cut off line formed by the second call of the judgment, i. e. "thence south 12 east 82 poles to a poplar and rock." We are convinced from a careful consideration of all the evidence, including the surveys, that no part of the 67 acre exclusion comes south of that line. We are further convinced from the evidence that none of the 35 acres, which appellant acquired from Means and Brumley by

the two deeds heretofore referred to and which appellant claims is the southern 35 acres of the exclusion, is any part of the 67 acre exclusion but is part of the John Jackman patent to the west of the Conner patent. It is consistent with the proof produced that 32 acres of the tract conveyed to appellant by Mattie Belle Stearns by deed, heretofore referred to, is part of the 67 acre exclusion but if so, it is the northern part thereof near the Russell-Clinton County line and is not contiguous to the balance of the 259 acre tract claimed by appellee Ballou, and presents no interference thereon. After careful consideration of the whole case we are of the opinion that the judgment of the lower court should be and it is affirmed.